# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTINA BOGLE,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA,<br><br>        Defendant. | CIVIL ACTION<br>NO. 15-00394 |

**PAPPERT, J.**                                                                                                                       **JULY 9, 2015**

## MEMORANDUM

Plaintiff Kristina Bogle ("Bogle") sued her former employer, the City of Philadelphia ("the City"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Americans with Disabilities Act of 1990 ("ADA"). Bogle also asserts a claim of intentional infliction of emotional distress under Pennsylvania common law. In short, Bogle contends that the City discriminated against her and then retaliated against her for complaining about the discrimination. The City moves to dismiss Bogle's race-based discrimination, retaliation, and constructive discharge claims as well as the intentional infliction of emotional distress claim. For the reasons that follow, the Court grants the motion.

### *Factual and Procedural Background*

Bogle, an African American female, began working for the City as a corrections officer in November 2002. Sometime in September 2010, she witnessed an incident between Lieutenant Raab[1], a Caucasian male, and an inmate. (Compl. ¶ 12, ECF No. 1) After the incident, Bogle informed Sergeant Bayard[2] and Sergeant Charmaine Collins of "her version of Raab's non-involvement in connection with the inmate complaint." (*Id.*) Sergeant Bayard, an African

---

[1]     Bogle does not provide Lieutenant Raab's first name.

[2]     Bogle does not provide Sergeant Bayard's first name.

American male, proceeded to refer to Bogle as an "Uncle Tom" and called her a "kiss ass to a white man." (*Id.*  ¶ 13.)  He also told Bogle that she was not black enough. (*Id.* ¶ 14.)  When Bogle tried to explain why she defended Lieutenant Raab and that her opinion had nothing to do with race, Sergeant Bayard responded "so . . . he's white." (*Id.* ¶ 15.)  Sergeant Collins, an African American female, laughed at Sergeant Bayard's comments. (*Id.* ¶ 16.)   Sergeant Bayard also ordered Bogle to travel on various clinic trips that could have been performed by other available officers, ordered her to complete clinic trips without the opportunity for a lunch break when he knew she was ill, and wrongfully accused Bogle of hanging up on him. (*Id.* ¶ 23.)  In the spring of 2011, Bogle filed an EEO complaint with the prison's EEO office pertaining to Sergeant Bayard's conduct. (*Id.* ¶ 24.)  A hearing was scheduled, but was subsequently cancelled because her claims were not being investigated.[3] (*Id.* ¶¶ 24-25.)

After Bogle filed her EEO complaint, Sergeant Collins repeatedly sought her out for discipline.  Collins "wrote up" Bogle in August 2011 for not transferring her keys to "her relief person" when she left her unit. (*Id.* ¶ 19.)  This write up resulted in a nine day suspension, from December 28, 2011 through January 6, 2012. (*Id.* ¶ 20.)  Bogle was again written up in January 2012 for being late to Roll Call, and she served a second nine day suspension in March 2012. (*Id.* ¶ 21.)  Officer Desai, an Indian male employee, was also written up for not having his keys on him. (*Id.* ¶ 27.)  Major Norman Williams, a Caucasian male, later expunged Officer Desai's disciplinary record because of Officer Desai's impeccable record.[4]  (*Id.*)

Bogle had been diagnosed with Post Traumatic Stress Disorder in 2004. (*Id.* ¶ 29.)  On February 22, 2012, her doctor concluded that she was disabled and could no longer work. (*Id.*

---

[3]     Despite her allegation that the City did not investigate her internal complaint, Bogle was re-interviewed as part of the internal investigation on April 27, 2011 and specifically asked about the "Uncle Tom" and "kiss ass" comments. (Pl.'s Opp'n Mot. Dismiss, Ex. A.)

[4]     There is no indication in the complaint as to whether Bogle's record was or was not similarly expunged.

¶ 31.)  Despite this diagnosis, Bogle's request for medical leave was denied on March 9, 2012. (*Id.* ¶ 32.)  Bogle was informed that she would be terminated or considered AWOL if she did not report to work.  (*Id.* ¶ 33.)  Further to his diagnosis, Bogle's doctor ordered that she remain on light duty with no inmate contact.  (*Id.* ¶ 34.)  The City accommodated these restrictions for only two or three days after she returned.  (*Id.* ¶ 35.)  The City's failure to thereafter provide reasonable accommodations "compelled" Bogle to resign on April 12, 2012.  (*Id.* ¶ 36.)  She was reinstated in a "non-guard, administrative position . . . with a significant loss of compensation" on July 27, 2013.  (*Id.* ¶ 37.)  On January 8, 2015, Bogle was again "compelled to leave the employ of defendant" due to the City's failure to accommodate her medical condition and the racial and gender based harassment and retaliation she endured.  (*Id.* ¶ 41.)

Bogle filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") on March 29, 2012.  (*Id.* ¶ 40.)  In that charge, she alleged gender discrimination arising from Sergeant Collins' disciplinary practices, and disability discrimination arising from the City's failure to grant her medical leave and its threats that she would be terminated if she did not report to work.  (*See* Def.'s Mot. Dismiss Ex. A, ECF No. 3.)   The charge was dually filed with the EEOC, and Bogle received a notice of right to sue letter from the EEOC on October 29, 2014.  (Compl. ¶ 5.)

## Legal Standard[5]

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223,

---

[5]  Bogle suggests that her "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." (Pl.'s Opp'n Mot. Dismiss 5.)  The Supreme Court rejected this "no set of facts" standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and articulated the plausibility standard described herein.

230 (3d Cir. 2010). "All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court "need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.* 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

To withstand a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 210-11 (citation omitted). A motion to dismiss will be granted if the factual allegations in the complaint are insufficient "to raise the right of relief above the speculative level." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### *Exhaustion of Administrative Remedies*

A Title VII plaintiff must exhaust all administrative remedies before bringing a claim for judicial relief. 42 U.S.C. § 2000e-5(e); *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). The PHRA has a similar exhaustion requirement and "claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol*, 82 F.3d at 1296. "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination, including new acts which occurred during the pendency of the proceedings before the EEOC." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)).  The federal claims, in other words, "are limited to matters of which the EEOC had notice and a chance, if appropriate, to settle." *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 468 (E.D. Pa. 2014) (quoting *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999)).

The City contends that Bogle failed to exhaust her administrative remedies with regard to her race-based discrimination and hostile work environment claims, her retaliation claim, and the January 8, 2015 constructive discharge.  Bogle concedes that she did not describe in her charge the facts underlying all but her gender and disability discrimination claims; she nonetheless contends that those claims "would undoubtedly be within the fair scope of the agency investigation into plaintiff's claims."  (Pl.'s Opp'n Mot. Dismiss 6, ECF No. 4.)[6]

The allegations in Bogle's charge would not have alerted the EEOC of the need to investigate her race-based claims.  Bogle identified specific circumstances where she was allegedly treated less favorably than a male co-worker because of her gender and other instances where she was allegedly treated unfairly because of her disability.  There are no allegations of race discrimination or retaliation.  Indeed, the charge never mentions Sergeant Bayard, the incident involving Lieutenant Raab, Bogle's EEO complaint, any discriminatory comments, or clinic assignments.  A reasonable investigation into the alleged gender and disability discrimination, or even more broadly into how the City disciplines women and accommodates those with disabilities, would not have uncovered Bogle's contentions that she had previously been mistreated by a different employee on the basis of her race.  *See Antol*, 82 F.3d at 1296 (holding that plaintiff who alleged only disability discrimination in informal complaint and

---

[6]   As Bogle's opposition brief is not paginated, citations refer to the page numbers assigned by the Court's CM/ECF system.

formal charge with EEOC did not exhaust administrative remedies with regard to a gender discrimination claim arising out of the same factual circumstances); *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 433 (E.D. Pa. 2007) ("[A] subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge.") (quoting *Kresefky v. Panasonic Commc'ns. & Sys. Co.*, 169 F.R.D. 54, 61 (D.N.J. 1996)).

Moreover, Bogle was allegedly harassed by Sergeant Bayard before she filed her EEO complaint in 2011, and was thus well aware of the discrimination of which she now complains before she filed the EEOC charge. Bogle failed to exhaust her administrative remedies as to those claims. *See DeLa Cruz*, 521 F. Supp. 2d at 435 ("[C]ourts generally have been less sympathetic toward unexhausted allegations that arose *prior to* the filing of the EEOC complaint as opposed to allegations pertaining to events that occurred *after* the filing of the EEOC complaint."). Because the discriminatory comments and mistreatment by Sergeant Bayard were outside the scope of a reasonable EEOC investigation, Bogle did not administratively exhaust the race discrimination and hostile work environment claims pled in Counts I and III or the retaliation claim based on Sergeant Bayard's conduct alleged in Count II.[7] They are accordingly dismissed.

Bogle alleges that she was "compelled to leave the employ of defendant due to the defendant's constructive discharge and failure to accommodate her medical condition and due to the racial and gender based harassment and retaliation she endured while within the defendant's

---

[7] It is not clear that Count II alleged a retaliation claim based on Sergeant Bayard's conduct. Sergeant Bayard's statements and harassing treatment were the subject of Bogle's internal EEO complaint. (Compl. ¶ 24.) There are no allegations of any conduct by Sergeant Bayard that post-dated the internal EEO complaint. Indeed, the only retaliatory treatment that occurred after the internal EEO complaint was the gender-based discriminatory discipline practices identified in her charge. (*Id.* ¶¶ 19-21, 53.) Nevertheless, the parties proceed with the belief that Bogle alleged a retaliation claim based on Sergeant Bayard's conduct, and the Court will do the same.

To the extent Bogle alleged a retaliation claim in Count II based on Sergeant Collins' conduct, the Court finds that this claim fell within the scope of a reasonable investigation despite the absence of a reference to the internal EEO complaint. Bogle exhausted her administrative remedies with respect to this claim.

employ" on January 8, 2015.  (Compl. ¶ 41.)   She proceeds on the theory that "her constructive discharge stemmed from the retaliatory conduct on the part of the defendant following [her] filing of her EEO complaint in 2011 and [her] EEOC filing in March 2012."  (Pl.'s Opp'n Mot. Dismiss 8.)  A plaintiff need not file a separate charge based on new acts that occurred during the pendency of the EEOC's investigation if the core grievance is the same and the claim falls within the scope of the EEOC's investigation.  *Waiters v. Parsons*, 729 F.2d 233, 238 (3d Cir. 1984).  However, "where no administrative investigation is pending at the time of the subsequent acts, the complainant must file a new administrative charge prior to filing suit."  *Pourkay v. City of Phila.*, No. 06-cv-5539, 2009 WL 1795814, at *7 (E.D. Pa. June 23, 2009); *see also Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174, 178 (3d Cir. 2011) (affirming district court's dismissal of plaintiff's discriminatory transfer claim as unexhausted because the transfer occurred after plaintiff received her right to sue letter and thus required a separate charge).  Bogle was constructively discharged more than two months after the EEOC had closed its investigation and she received a right to sue letter.  There is no indication that Bogle filed a separate charge regarding the constructive discharge.  Her claim based on the constructive discharge that occurred on January 8, 2015 is accordingly dismissed.

*<u>Intentional Infliction of Emotional Distress Claim</u>*

The City contends that Bogle's claim for intentional infliction of emotional distress ("IIED") is preempted by the PHRA because Bogle has not alleged extreme or outrageous conduct.  (Def.'s Mot. Dismiss 9.)  Bogle argues that the retaliation described in the complaint "raises the defendant's behavior to a higher level—a level that indeed leans toward a finding of outrageous conduct."  (Pl.'s Opp'n Mot. Dismiss 10.)  The Court interprets the City's motion to be based on two alternative arguments.  First, that the claim is preempted by the PHRA and second, that Bogle failed to allege conduct that is sufficiently outrageous to state an IIED claim.

The Court need not determine whether Bogle's claim is preempted by the PHRA because she has not stated a claim for intentional infliction of emotional distress.

Under Pennsylvania law the elements of a claim of IIED[8] are: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), *aff'd* 720 A.2d 745. Stating a claim of IIED also requires an allegation of some sort of physical injury, harm or illness related to the distress. *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (citations omitted). The Court must determine, as an initial matter, if the defendant's conduct is so extreme and outrageous to permit recovery. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). Notably, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.*

Courts applying Pennsylvania law have repeatedly found that allegations of race and gender discrimination, even when coupled with retaliatory conduct, do not meet the "extreme and outrageous conduct" standard necessary to state a claim of IIED. *See Hargraves v. City of Phila.,* No. 05-cv-4759, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007) (collecting cases); *see also Lane v. Cole*, 88 F. Supp. 2d 402, 406 (E.D. Pa. 2000) ("Invidious discrimination is not alone sufficient to support an intentional infliction of emotional distress claim.") (citations omitted). Bogle alleges that she was repeatedly subjected to racially derogatory comments, continually sought out for discipline, ordered on clinic trips that removed her from her post and

---

[8] The Pennsylvania Supreme Court has never expressly recognized a cause of action for intentional infliction of emotional distress. *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). However, the Third Circuit has held that § 46 of the Restatement (Second) of Torts may be applied "as the basis in Pennsylvania law for the tort of intentional infliction of emotional distress." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979).

prohibited her from taking a lunch break, and wrongfully accused of hanging up on Sergeant Bayard after she defended Lieutenant Raab. Her complaints regarding this mistreatment were not investigated and the hearing was cancelled. Bogle's alleged treatment was no more severe than allegations in other cases in this district in which IIED claims have been dismissed. *See, e.g.*, *Scheffler v. Ultra Page, Inc.*, No. 07-1278, 2007 WL 1847407, at *1, *4 (E.D. Pa. June 25, 2007) (dismissing IIED claim where supervisor told a female plaintiff to "be one of the boys," male employees circulated lewd images and videos, supervisor forced plaintiff to participate in a weight loss contest, supervisor informed mortgage company that plaintiff was no longer employed though she was out on maternity leave causing her to be denied a mortgage, and supervisor constructively discharged plaintiff by eliminating her position and requiring her to accept a demotion); *Watkins v. Pa. Bd. of Prob. & Parole*, No. 02-cv-2881, 2002 WL 32182088, at *8 (E.D. Pa. Nov. 25, 2002) ("Here, the racial discrimination, retaliation, and work-related harassment alleged does not satisfy the element of extreme and outrageous conduct required to state this cause of action."); *Coney v. Pepsi Cola Bottling Co.*, No. 97-cv-2419, 1997 WL 299434, at *1 (E.D. Pa. May 29, 1997) ("[H]ighly provocative racial slurs and other discriminatory incidents do not amount to actionable outrageous conduct."); *Tronoski v. Murphy*, No. 95-cv-1093, 1995 WL 225312, at *3 (E.D. Pa. Apr. 17, 1995) (dismissing IIED claim premised on sexual harassment due to the absence of allegations of retaliation).

The conduct alleged here should certainly never be part of a workplace environment, but it does not rise to the level of "the most clearly desperate and ultra extreme conduct" required to support an IIED claim under Pennsylvania law. *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). Furthermore, Bogle's threadbare legal conclusion that she suffered "emotional upset and distress" is insufficient to state a plausible claim of IIED. Bogle's IIED claim is dismissed.

*Conclusion*

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). An amendment is futile "if the complaint, as amended would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1999) (citation omitted), *vacated on other grounds* 525 U.S. 459. Futility is measured by the same standard of legal sufficiency as under Federal Rule of Civil Procedure 12(b)(6). *Id.*

Prior to bringing a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC within the statutory time period, which in Pennsylvania is within 300 days of an unlawful employment practice. *Bullock v. City of Phila.*, 250 F. App'x 512, 514 (3d Cir. 2007); *see also* 42 U.S.C. § 2000e-5. Significantly more than 300 days have passed since Sergeant Bayard's conduct as identified in the complaint. Bogle's claims based on this conduct are accordingly time barred and will be dismissed with prejudice. On the other hand, Bogle's alleged constructive discharge occurred less than 300 days ago. The Court therefore dismisses this claim without prejudice. Should Bogle properly exhaust her administrative remedies, she may reassert her constructive discharge claim.

Finally, though conduct rising to the level of outrageousness necessary to sustain an IIED claim is "extremely rare" in the employment context, the Court is unwilling, at this early juncture, to conclude that amendment is futile. Bogle may accordingly amend her complaint to allege *facts* consistent with this opinion to state a claim for IIED.

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.